UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDUARDO ENRIQUE ALEGRETT,<br><br>    Plaintiff,<br><br>    v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>    Defendants. | Case No. 12-cv-05538-MEJ<br><br>**ORDER RE: CROSS MOTIONS FOR PARTIAL SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 43 |

## INTRODUCTION

In this lawsuit, Plaintiff Eduardo Enrique Alegrett ("Plaintiff") brings claims under 42 U.S.C. § 1983 and related state law claims against Defendants City and County of San Francisco (the "City"), San Francisco Police Department ("SFPD"), SFPD Chief of Police Greg Suhr, and Officer Matthew Sullivan (collectively, "Defendants"), relating to his arrest on February 27, 2012. Compl., Dkt. No. 1. Defendants move for Partial Summary Judgment on Plaintiff's second, third, seventh and ninth claims for relief, arguing that Plaintiff cannot establish municipal liability or standing for purposes of an injunction. Dkt. No. 43. Plaintiff filed an Opposition on December 17, 2013. Dkt. No. 52. Defendants filed their Reply on December 24, 2013. Dkt. No. 59. Having carefully considered the papers submitted by the parties, relevant legal authority, and the record in this case, the Court GRANTS Defendants' Motion for the reasons explained below.

## BACKGROUND

A.  **Factual Background**

On February 27, 2012, Officers Ralph Kugler and Hamdy Habib of the SFPD responded to a call of a battery in progress at 88 Perry Street. Defs.' Req. for Jud. Notice ("RJN"), Ex. A (Preliminary Hearing ("Prelim.")) 96:7-11; Russi Decl. Ex. A (Sullivan Depo.) 18:12-19:12, Ex. B (Incident Rpt.), Dkt. No. 47. When they arrived at the building, the suspect had left. Prelim. 42:3-6, 96:21-27; Incident Rpt. The officers interviewed witnesses, who stated that Plaintiff had assaulted and battered a neighbor and the building manager. Prelim. 12:26-14:4, 37:3-11, 40: 16-

27, 43: 20-26; Russi Decl. Ex. C (Brown Depo.) 14: 12-25, 24: 5-13, Dkt. No. 46.  Plaintiff returned during the interview.[1]  Prelim. 44:1-9, Brown Depo. 24: 5-13.  Plaintiff told Officer Kugler that he had a gun and that he was going to use it.  Prelim. 96:21-97:11; Russi Decl. Ex. D (Kugler Depo.) 31:25-32:14.  Plaintiff concealed his hand behind his back while he made these statements.  *Id*. (Kugler Depo.) 31:25-32:14.

Officer Kugler drew his firearm and then requested backup by pressing the emergency button on his radio.  Prelim. 98:3-7; Kugler Depo. 31:25:32:14.  Officer Habib, who had been outside retrieving some forms, responded to the third floor after hearing Officer Kugler's request for help.  Prelim. 115:3-27.  The officers tackled Plaintiff and got him to the ground.  Kugler Depo. 38:15-39:3.  Plaintiff refused to submit to an arrest.  Kugler Depo. 39:1-5; Russi Decl. Ex. E (Habib Depo.) 10:14-11:6; Prelim. 117:1-21.  On the ground, Plaintiff struggled with the officers, who did not know whether Plaintiff had a gun.  Kugler Depo. 31:25-32:14; Prelim. 99:27-100:23.  Officer Habib sprayed Plaintiff in the face with pepper spray.  Habib Depo. 15:25-16:2; Prelim. 118:11-21.  The pepper spray did not appear to have any effect on Plaintiff.  Kugler Depo. 8:19-9:11.  Plaintiff also told the officers that he had AIDS, spit on the officers, clawed at Officer Habib's face, and attempted to bite the officers.  Kugler Depo. 13:25-14:3; Habib Depo. 10:14-11:1, 13:10-14:8, 18:16-23; Prelim. 100:4-101:7.  During this encounter, Plaintiff wiped the pepper spray off of his own face and onto Officer Habib's face, obscuring the officer's vision, and preventing him from effectively assisting Officer Kugler in restraining Plaintiff's arms.  Habib Depo. 15:14-16:4, 16:21-17:17.

Officer Sullivan and his partner, Officer Peralta, responded to the officers' call for back up.  Sullivan Depo. 18:12-19:21.  When Officer Sullivan arrived on the third floor, he immediately could tell that pepper spray had been deployed because he smelled it and felt the effects.  Sullivan Depo. 20:20-21:5; Prelim 75: 7-27.  He ran down the hallway and saw Officers Kugler and Habib struggling to gain control of Plaintiff.  Sullivan Depo. 9:5-22; Prelim. 76:5-22.  Officer Kugler told Officer Sullivan that Plaintiff was biting and spitting and that he said that he had a gun.

---

[1] SFPD officers had performed a welfare check on Plaintiff earlier that day, but the responding officers did not know that at the time of the arrest.  Habib Decl. 13: 3-9.

Sullivan Depo. 9:25-10:4. Officer Sullivan attempted to gain control of Plaintiff's hands, but could not get them away from his chest. *Id*. 10:5-14. Officer Sullivan then hit Plaintiff in the head ten times with a closed fist in order to distract Plaintiff so that the officers could get him under control and into handcuffs. *Id*. 9:23-10:14, 12:1-13:4; Prelim. 76:23-77:8, 77:24-79:17. The tactic worked, and Plaintiff was arrested. Kugler Depo. 22:17-23:7. A portion of the incident was captured on a cell phone video by civilian witnesses. Lagos. Decl. Ex. 3 and 4, Dkt. No. 53.

Plaintiff has no recollection of the incident underlying this case. Undisputed Material Facts ("UMF") No. 6, Dkt. No. 49. The last memory he has was about a week before this incident, and the next memory he has is being in the hospital after the incident happened. *Id.* However, Plaintiff pled guilty to charges arising out of this incident. Russi Decl. Ex. F. (Alegrett Depo.) 162:14-22.

**B. Undisputed Facts**

The SFPD has a policy that prohibits the use of unreasonable force. UMF No. 1. The City trains officers to comply with the POST guidelines on use of force, which prohibit the use of unreasonable force. *Id.* No. 5. POST is the statewide standard for peace officer training. *Id*.

The SFPD has policies and procedures in place for investigating and disciplining officers for misconduct, including for using excessive force. *Id.* No. 2. The Office of Citizen Complaints ("OCC") is an independent agency of the City created by Section 4.127 of the San Francisco Charter. *Id*. OCC is charged with investigating citizen complaints concerning the conduct of on-duty police officers. *Id*. Each complaint received by the OCC is fully investigated by a staff of trained investigators. *Id*. Complaints of misconduct are not in and of themselves proof that such misconduct was committed. *Id*. Complaints may be meritless, frivolous, mistaken, or otherwise without legal or factual basis. *Id*. Where a complaint is investigated and substantiated, the OCC will make a finding sustaining such complaint, and refer the officer to the SFPD for discipline. *Id*. The officer may contest that finding through a Department or Police Commission hearing process. *Id*. If OCC recommends sustaining a complaint and the Department declines to discipline the officer or if OCC believes more severe discipline should be imposed, OCC has the option of bringing disciplinary charges against the officer before the Police Commission. *Id*.

3

1   The SFPD has a long standing written policy that complaints of misconduct be taken
2   seriously and that such complaints be systematically reviewed in order to learn of officer behavior
3   or patterns that need to be addressed. *Id.* No. 3. The policy is contained in the Department
4   General Order 3.19 (Early Intervention System) and 5.01(N) (Reporting and Investigating Use of
5   Force), which addresses San Francisco Police officers who receive complaints of excessive force.
6   *Id*. The Early Intervention System policy dictates the Department's handling and response to
7   officers who fall within its guidelines. *Id*. The policy identifies officers with a pattern of behavior
8   and requires an elevated course of counseling and training for those officers who meet certain
9   criteria within the policy. *Id*. Officers come within the scope of the program based on the number
10  of citizen complaints, documented uses of force, and other potential indicators. *Id*.

11  The SFPD also has a specialized unit called Internal Affairs that investigates complaints of
12  misconduct, including complaints of excessive force, made by employees or officers of the SFPD
13  against officers. *Id.* No. 4.

### C. Disputed Facts

15  Plaintiff asserts that the SFPD has an unwritten de facto custom or practice that ignores the
16  official written use of force policy and encourages the use of unreasonable force in contravention
17  of the SFPD's written policy. Pl.'s Stmt. of Facts No. 1, Dkt. 52-1. Plaintiff contends that the
18  SFPD has a policy, custom, or practice of failing to train officers to recognize citizens with mental
19  or emotional breakdowns. *Id*. No. 2. Plaintiff also contends that SFPD has a policy, custom, or
20  practice of failing to train officers to appropriately respond to citizens in crisis who are armed
21  (whether or not they are a threat to another person) to de-escalate the situation and/or to obtain
22  compliance with officer commands. *Id*. No. 3.

### D. Procedural Background

24  On October 29, 2012, Plaintiff filed the present Complaint, asserting eight causes of
25  action: (1) a claim under 42 U.S.C. § 1983 ("Section 1983") alleging excessive force against
26  Officer Sullivan; (2) a Section 1983 *Monell*[2] claim against Chief Suhr and the City; (3) an assault

---

[2] Under *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978), a municipal government entity such as the City and County of San Francisco may be held liable under § 1983

4

1  claim against Officer Sullivan; (4) a battery claim against Officer Sullivan; (5) a claim of
2  intentional infliction of emotional distress against Officer Sullivan; (6) a negligence claim against
3  Officer Sullivan; (7) a Section 1983 *Monell* claim against Chief Suhr and the City based on
4  negligent hiring, training, discipline, and supervision; (8) a claim of violation of California Civil
5  Code § 52.1, alleged against Officer Sullivan and the City; and (9) a Section 1983 *Monell* claim
6  against Chief Suhr and the City for injunctive and declaratory relief.

On December 3, 2013, Defendants filed the present Motion for Partial Summary Judgment as to: (1) the Section 1983 *Monell* claims against the City and Chief Suhr in the Second and Seventh Causes of Action; (2) the assault claim against Officer Sullivan in the Third Cause of Action; and (3) the claim for declaratory and injunctive relief in the Ninth Cause of Action.[3]

Plaintiff filed an Opposition on December 17, 2013. Opp'n, Dkt. No. 52. Plaintiff did not oppose Defendant's motion as to the Third (Assault) and Seventh (*Monell* - Failure to Train or Discipline) claims for relief. Opp'n, Dkt. no. 52, at 17. Plaintiff also stated that he no longer asserts a *Monell* claim against Chief Suhr in the Second claim (Section 1983). *Id.*

## LEGAL STANDARD

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

Where the moving party will have the burden of proof on an issue at trial, it must

---

for injuries inflicted by the acts of its officers if such injuries are pursuant to official policy.

[3] As the City did not move for summary judgment on the issue of excessive force, the Court will assume that Plaintiff can prove a constitutional violation for this motion only. Whether excessive force was, in fact, used is beyond the scope of this motion.

affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 994 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 324-25.

If the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 250. It is not the task of the Court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). The Court "rel[ies] on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Id.*; *see also Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010). Thus, "[t]he district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001). If the nonmoving party fails to make this showing, "the moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 323 (internal quotations omitted).

## DISCUSSION

### A. Requests for Judicial Notice

Defendants request the Court to take judicial notice of the reporter's transcript of proceedings of the Preliminary Hearing in Department 20 of the San Francisco Superior Court dated February 24, 2012, in *People v. Eduardo Enrique Alegrett*. Defs.' RJN, Dkt. No.47. Plaintiff does not oppose the request. Under Federal Rule of Evidence 201, "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Courts may take judicial notice of "undisputed matters of public record," but generally may not take judicial notice of "disputed facts stated in public records." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th

6

Cir.2001) (emphasis in original). Accordingly, Defendants' Request is GRANTED.

Plaintiff requests the Court to take judicial notice of four cases in which the City's police practices expert Don Cameron recently testified, which resulted in jury verdicts for the City on the issue of excessive force. Pl.'s RJN, Dkt. No. 55. Although not fully developed in the Opposition, it appears Plaintiff seeks judicial notice in order to argue that the Court should accord Mr. Cameron's testimony little weight. However, in considering a motion for summary judgment, the Court "may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir.1997). Plaintiff's request for judicial notice of these cases is therefore DENIED.

**B.   Municipal Liability Under *Monell***

A plaintiff seeking to establish municipal liability under Section 1983 may do so in one of three ways: (1) demonstrating that a municipal employee committed the alleged constitutional violation "pursuant to a formal governmental policy or longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity;" (2) demonstrating that the individual who committed the constitutional violation was an official with "final policy-making authority and that the challenged action itself thus constituted an act of official government policy;" or (3) demonstrating that "an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

In the absence of a formal governmental policy, a plaintiff must show a "longstanding practice or custom which constitutes the standard operating procedure of the local government entity." *Id.* The custom must be so "persistent and widespread" that it constitutes a "permanent and well settled city policy." *Id*. "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Id*.

In moving for summary judgment, Defendants argue that Plaintiff has not submitted evidence sufficient to create a material factual dispute on the *Monell* claims. Specifically, Defendants contend that Plaintiff cannot establish municipal liability based on an unconstitutional

7

1    custom theory because he lacks evidence of repeated constitutional violations or that the City has a

2    policy of failure to train on any relevant issue.  Mot. at 13.  Defendants further argue that Plaintiff

3    cannot establish a claim on a ratification theory.  *Id*. at 12.  Last, because Plaintiff cannot establish

4    municipal liability, Defendants contend that his claim for injunctive and declaratory relief also

5    fails.  *Id*. at 15.

6    Plaintiff counters that the City maintains policies and customs that encourage its police

7    officers to use excessive force despite a suspect's mental illness.  Opp'n at 14.  Plaintiff maintains

8    that the City has a longstanding policy of failing to adequately train its police officers to recognize

9    citizens with mental or emotional breakdowns; to appropriately respond to armed citizens in crisis

10   regardless of their threat-level; and to employ de-escalation techniques.  *Id*.  Plaintiff further

11   contends that the City is liable under *Monell* because it ratified Officer Sullivan's alleged use of

12   excessive force by failing to discipline him.  *Id*. at 16.

13       1.    <u>*Monell* Liability Based on Custom</u>

14   Defendants first argue that Plaintiff cannot prove a *Monell* claim based on an

15   unconstitutional policy or custom of encouraging the use of unreasonable force because Plaintiff

16   has not offered any admissible evidence of repeated constitutional violations.  Mot. at 15.  Plaintiff

17   maintains he has set forth a valid *Monell* claim under this theory.  Opp'n at 13.

18   A "custom" for purposes of municipal liability is a "widespread practice that, although not

19   authorized by written law or express municipal policy, is so permanent and well-settled as to

20   constitute a custom or usage with the force of law."  *St. Louis v. Praprotnik*, 485 U.S. 112, 127

21   (1988); *Los Angeles Police Protective League v. Gates*, 907 F.2d 879, 890 (9th Cir. 1990).  A

22   plaintiff "may attempt to prove the existence of a custom or informal policy with evidence of

23   repeated constitutional violations for which the errant municipal officials were not discharged or

24   reprimanded."  *Gillette v. Delmore*, 979 F.2d 1342, 1349 (9th Cir. 1992).  To be sufficient to

25   establish municipal liability under *Monell*, the challenged action must be the "standard operating

26   procedure" of the municipality.  *See Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1249

27   (9th Cir. 2010) (internal quotation marks and citation omitted).

28   A plaintiff cannot prove the existence of a municipal policy or custom based solely on the

occurrence of a single incident of unconstitutional action by a non-policymaking employee:

> Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell,* unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker. Otherwise the existence of the unconstitutional policy, and its origin, must be separately proved. But where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation.

*City of Oklahoma v. Tuttle,* 471 U.S. 808, 823-24 (1985).

As discussed below, the Court finds that summary judgment is appropriate on Plaintiff's *Monell* claims because he is unable to establish the existence of any unconstitutional policy or custom.

### a. Policy of Encouraging the Use of Excessive Force

Plaintiff contends the City has a custom "that ignores the official written use of force policy and encourages the use of unreasonable force in contravention of Defendants' written policy." Pl.'s Stmt. of Facts No. 1. Particularly, Plaintiff argues that the City has a custom of "not considering other force options available." Opp'n at 14. Plaintiff relies on the following evidence in support of his claim: (1) videos of a portion of the arrest; (2) General Order 6.14, entitled "Psychological Evaluation of Adults"; (3) deposition testimony of Officer Helmer, the City's 30(b)(6) expert on use of force practices; and (4) the trial testimony of Don Cameron, the City's police practices expert, in a different case. Pl.'s Stmt. of Facts No. 1 (citing Lagos Decl. Ex. 3, 4, 9, 14, 16).

Drawing all reasonable inferences in Plaintiff's favor, the Court concludes that Plaintiff has not submitted sufficient evidence to create a genuine issue of material fact with respect to this claim against Defendants. Specifically, Plaintiff has not submitted any evidence to show the City or Chief Suhr maintained a "policy or custom" of encouraging the use of excessive force. Plaintiff does not dispute that the City's use of force policy is constitutional. Opp'n at 13. Instead, Plaintiff contends that the City has an unwritten policy of using excessive force. *Id*. Accordingly, Plaintiff must introduce evidence to establish the existence of a policy or custom of the use of

excessive force other than the alleged excessive force used during his own arrest. *See Tuttle,* 417 U.S. at 823-24. Plaintiff has not done so. Plaintiff did not submit evidence of any other incidents of Officer Sullivan using excessive force.[4] Nor did Plaintiff submit any evidence of incidents of other officers using excessive force.[5] "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino*, 99 F.3d at 918.

Plaintiff is also unable to establish evidence of an unwritten policy or custom by the testimony of the City's 30(b)(6) expert on the use of force, Officer Helmer. Plaintiff submits a portion of Officer Helmer's testimony in which he stated that he personally did not agree that officers should be required to use only the force minimally necessary to accomplish a lawful police task. Lagos Decl., Ex. 9 (Helmer Depo.) 44:20-45:6. Plaintiff suggests that Officer Helmer's statement is sufficient evidence of an unwritten policy of encouraging the use of excessive force.[6] However, this is insufficient to create a material issue of fact as there is no

---

[4] Plaintiff's bare referral to the existence of two unsubstantiated OCC complaints against Officer Sullivan does not establish the existence of a policy or custom of encouraging excessive force. *See Haynes v. City and Cnty. of San Francisco,* 2010 WL 2991732, at *4 (N.D. Cal. July 28, 2010) ("In the context of a city's alleged indifference to its police officers violating the constitutional rights of its residents, providing evidence of past complaints against officers is generally insufficient to establish a policy or custom of indifference.")

[5] Plaintiff's counsel has referred the Court to four factually dissimilar civil rights actions he filed against the City over a three-year period: *Woodson v. CCSF* (USDC (N.D. Cal.) Case No.: C 11 00057 JCS (settled); *Krebs v. CCSF* (USDC (N.D. Cal.) Case No.: C 12-03974 EDL (settled); *Russell v. CCSF* (USDC (N.D. Cal.) Case No.: C 12-00929 JCS (settled); and *Luong v. CCSF* (USDC (N.D. Cal.) Case No.: C 11-05661 MEJ (jury verdict for the City). Opp'n at 14. None of these cases involved the arrest of an armed citizen in the midst of a mental crisis. The City settled three of the cases, and the fourth (*Luong*) terminated in a jury verdict in the City's favor. Accordingly, mere reference to these cases do not demonstrate that the City has a policy of condoning excessive force, or establish that Chief Suhr had notice that there was a problem with officers using excessive force. Moreover, the *Luong* case actually supports the City's position that there is no "policy or custom" endorsing the use of excessive force.

[6] Plaintiff also relies on similar testimony by the City's use of force expert, Don Cameron, in another trial for the same proposition. This testimony comes from the *Luong* trial, a factually different case in which a jury returned a verdict for the City on the issue of excessive force. (Lagos Decl. Exh. 16 at 8:11-23). However, to the extent that Mr. Cameron's testimony is relevant, it would stand for the same proposition that officers are not required to use the least intrusive amount of force. *Forrester*, 25 F.3d at 807.

constitutional requirement that officers use the least intrusive measure of force, so long as the force used is reasonable under the circumstances. *Forrester v. City of San Diego*, 25 F.3d 804, 807 (9th Cir. 1994) ("Police officers, however, are not required to use the least intrusive degree of force possible. . . . [T]he inquiry is whether the force that was used to effect a particular seizure was reasonable . . . ."). The rest of the testimony cited by Plaintiff in support of an unconstitutional policy establishes that the City's application of its use of force policies is constitutional. The City: (1) trains officers to use force reasonable under all the circumstances; (2) to make the force option determination based on the factors present at the time; and (3) trains officers to comply with General Order 5.01 as a whole, which requires officers to use reasonable force. Helmer Depo. 34:7-35:5, 37:2-38:21, 40:18-41:22, 43:2-11; 44:5-18; 45:8-10; Supp. Russi Decl. Ex. B (Helmer Depo.) 27:19-28:4, Dkt. No. 61.

Without more, Plaintiff's evidence fails to raise a genuine issue of material fact as to whether the City had a policy or custom of encouraging police officers to use excessive force against citizens. *See Trevino*, 99 F.3d at 920 (evidence must establish "a 'longstanding practice or custom which constitutes the standard operating procedure of the local government entity.'")

Last, Plaintiff has also failed to submit any evidence to show that the alleged policy or custom of encouraging the use of excessive force was the moving force behind the constitutional violation he claims to have suffered. "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employees." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 405 (1997). "Congress did not intend municipalities to be held liable unless deliberate action attributable to the municipality directly caused a deprivation of federal rights." *Id*.

Here, Plaintiff appears to assert that he can prove the City was the moving force behind his injury because it encouraged Officer Sullivan to use excessive force by failing to discipline him for any complaints against him. Opp'n at 16. While unconstitutional policies and customs can be inferred from evidence of a municipal official's failure to investigate and failure to discipline or reprimand offending employees (s*ee Hunter v. Cnty. of Sacramento*, 652 F.3d 1225, 1233–34 (9th

11

Cir. 2011)), Plaintiff has not presented any evidence suggesting that the City acted in conscious disregard to a risk that Officer Sullivan, or any other SFPD officer, would use excessive force against him. For instance, Plaintiff has not submitted evidence that the City ignored prior meritorious complaints against Officer Sullivan, or any other officer, for engaging in the use of excessive force.

Accordingly, even when the facts are viewed in a light most favorable to Plaintiff, they do not support the existence of a policy or custom favoring the use of excessive force. The evidence falls short of proof that the use of force was "so persistent and widespread that it constitutes a permanent and well settled [County] policy" or that it was "standard operating procedure." *Trevino*, 99 F.3d at 918; *Clouthier*, 591 F.3d at 1249. Summary judgment as to the *Monell* "policy or custom" of encouraging the use of excessive force claim in Plaintiff's second cause of action is therefore GRANTED.

        b. *Custom Of Failing To Train Officers to: Recognize Individuals In Crisis; Respond Appropriately to Armed Citizens in Crisis; or to Deescalate a Situation With a Citizen In Crisis.*

Plaintiff contends that municipal liability should be imposed because "the SFPD has a policy, custom, or practice of failing to train officers to recognize citizens with mental or emotional breakdowns." Pl.'s Stmt. of Facts No. 2. Plaintiff also contends that "SFPD has a policy, custom, or practice of failing to train officers to appropriately respond to citizens in crisis who are armed (whether or not they are a threat to another person) to de-escalate the situation and/or to obtain compliance with officer commands." *Id*. No. 3. Defendants argue that Plaintiff did not submit evidence of a pattern of similar unconstitutional conduct, and cannot establish that the City failed to train on any relevant issue. Reply at 4.

There are limited circumstances in which an allegation of a "failure to train" can be the basis for liability under Section 1983. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 387 (1989). To establish municipal liability under Section 1983 premised on a failure to train, a plaintiff must show: (1) deprivation of a constitutional right, (2) a training policy that "amounts to deliberate indifference to the [constitutional] rights of persons with whom the police come into contact"; and (3) that his constitutional injury would have been avoided had the City properly trained those

officers.  *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007) (quoting *Canton*, 489 U.S. at 388-89).

"A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train. . . . Without notice that a course of training is deficient in a particular respect, decision makers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights."  *Connick v. Thompson*, 131 S.Ct. 1350, 1360 (2011) (citation omitted).  To show deliberate indifference, Plaintiff must demonstrate that the City fails to train officers to recognize citizens with mental or emotional breakdowns.  Pl.'s Stmt. of Facts No. 2.  Plaintiff also contends that the City fails to train officers to appropriately respond to citizens in crisis who are armed (whether or not they are a threat to another person) to de-escalate the situation and/or to obtain compliance with officer commands.  *Id.* No. 3.

On the evidence presented, Plaintiff cannot establish that the City has a custom or policy of failing to train officers in any of the areas indicated, or that any of the City's policies are deficient. Plaintiff primarily relies on 2013 OCC policy recommendations for scenario-based training to address "officer involved shootings of emotionally disturbed individuals with bladed weapons" in order to establish that there is a department-wide inadequacy in training.  Lagos Decl. Ex. 12.  But this policy addresses a narrow issue not present in this case: whether the City needs additional policies regarding training officers in preventing the use of *deadly* force during the arrest of emotionally disturbed individuals with *bladed* weapons.  *Id*.  Plaintiff did not have a bladed weapon, and officers did not use deadly force during the arrest.  (*See* Lagos Decl., Ex. 9 (Helmer Depo) 23:8-10 (uncontested testimony by the City's 30(b)(6) use of force expert that Plaintiff's arrest was "not a deadly force scenario")).  The need for training on this narrow issue does not establish that the City has a policy of failing to train officers to "appropriately respond to citizens in crisis who are armed (whether or not they are a threat to another person) to de-escalate the situation and/or to obtain compliance with officer commands" in all situations.

Plaintiff did not submit any other evidence showing that the City has a policy of failing to train in any relevant respect.  Plaintiff points to the 2011 "SFPD Department Bulletin A11-113 -

1    Response to Mental Health Calls With Armed Suspects" as an example of an area where there is a
2    lack of training in appropriate response to such arrestees. Opp'n at 14. However, this document
3    establishes that the City does have a policy of attempting to deescalate situations where the armed
4    person "is not a threat to any other person." *Id*.

5    Although Plaintiff alludes to the fact that the City does not have any recent written policies
6    with respect to the issues identified (Lagos Decl., Ex. 12 (Kruger Depo.) 17:14-18:5), Plaintiff did
7    not establish that the City actually lacked policies requiring training on the appropriate use of
8    force with respect to mentally ill individuals. Rather, Plaintiff's remaining evidence establishes
9    that not only does the City have a constitutional policy of requiring the use of reasonable force, it
10   also has a policy of providing officers with training on recognizing persons with mental illness,
11   and de-escalation techniques. Officer Kruger, the City's 30(b)(6) designee on mental health
12   issues, testified that all recruits are given either 3-4 hours of POST-approved training on assessing
13   whether a person might be suffering a mental disturbance. Kruger Depo. 39:15-40:14. The City
14   also offers Crisis Intervention Training in which officers were provided with four days of training
15   from psychiatrists, psychologists, and other professionals in the identification of mental issues,
16   and scenario based de-escalation techniques. Suppl. Russi Decl. Ex. D (Kugler Depo. 22:13-
17   40:25.) Dkt. No. 61-1. Both Officer Sullivan and one of the other arresting officers took this
18   training. Lagos Decl., Ex. 7 (Sullivan Depo.) 26:10-27:2.

19   Here, too, Plaintiff fails to establish that any training deficit was a "moving force" behind
20   the alleged constitutional violation in this case. In order to be a "moving force" behind Plaintiff's
21   injury, he must show that the "identified deficiency" in the City's training policies is "closely
22   related to the ultimate injury." *City of Canton*, 489 U.S. at 391. In other words, Plaintiff must
23   establish "that the injury would have been avoided," had the City trained its officers differently.
24   *Blankenhorn*, 485 F.3d at 484 (citations omitted). Plaintiff has not submitted any evidence to
25   support this causal connection. Accordingly, summary judgment as to Plaintiff's *Monell* claim
26   based on a custom or policy of failure to train is GRANTED.

27       2.   *Monell* Liability Based on Ratification
28       Plaintiff argues that Defendants are liable under *Monell* because the City ratified Officer

14

Sullivan's unconstitutional use of excessive force by failing to discipline him for his conduct "arising out of this incident, or any other excessive force claim." Opp'n at 16.

An authorized policymaker's ratification of a subordinate's decision can form the basis of *Monell* liability. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). To show ratification, a plaintiff must establish that the "authorized policymakers approve a subordinate's decision and the basis for it." *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004) (internal citations omitted). For liability to attach, the policymaker must have knowledge of the constitutional violation and actually approve of it. *Id*. A mere failure to overrule a subordinate's actions, without more, is insufficient to support the imposition of liability against the municipality. *Id*.; *see also Haugen v. Brosseau*, 351 F.3d 372, 393 (9th Cir. 2013) (a "single failure to discipline" an officer does not rise to the level of official ratification).

Plaintiff contends that the City ratified Officer Sullivan's conduct because it did not discipline him for this incident or any other. Opp'n at 16. However, failure of a police department to discipline in a specific instance is not an adequate basis for municipal liability. *Santiago v. Fenton*, 891 F.2d 373, 382 (1st Cir. 1989). Accordingly, the fact that the City did not discipline Officer Sullivan for this incident does not establish that City policymakers "made a deliberate choice to endorse" Officer Sullivan's actions. *Gillette*, 979 F.2d at 1348.

Plaintiff is also unable to establish ratification based on the conclusory argument that Officer Sullivan was not disciplined for "any other excessive force claim."[7] Opp'n at 16. These "other claims," which refer to two unsubstantiated OCC complaints, are insufficient to establish the City's knowledge and approval of Officer Sullivan's actions. It is the policymaker's authority to make final decisions on behalf of a local government that makes his actions capable of imposing liability on it. *See Praprotnik*, 485 U.S. at 127. Plaintiff's bare reference to the complaints, without any accompanying evidence as to whether they were ever substantiated or referred to Chief Suhr for discipline, is insufficient to create the inference that a City policymaker found that unconstitutional conduct actually occurred, and then made a conscious, affirmative

---

[7] Plaintiff refers to these complaints in passing, and does not provide specific argument with respect to their significance to his claims.

1  choice to approve it. *Haugen*, 351 F.3d at 393. Only if "the authorized policymakers approve a
2  subordinate's decision and the basis for it," would their ratification be chargeable to the
3  municipality, which is not the case here. *Praprotnik*, 485 U.S. at 127. Accordingly, because
4  Plaintiff has failed to present sufficient evidence from which a reasonable jury could infer that the
5  City ratified police misconduct by failing to discipline Officer Sullivan, summary judgment is
6  GRANTED in favor of Defendants.

**C.   Standing to Pursue Section 1983 Claim for Declaratory and Injunctive Relief**

Finally, Defendants move to dismiss Plaintiff's claim for injunctive relief, arguing that he lacks standing to assert this claim because there is no *Monell* liability. Mot. at. 16. The Defendants further contend that even if there were a basis for municipal liability, Plaintiff cannot meet his burden of showing a sufficient likelihood that he will again be wronged in a similar way, which is a prerequisite for seeking equitable relief. *Id.* at 15. Plaintiff responds that he has sufficiently proven a pattern and practice of unconstitutional conduct to entitle him to extraordinary relief. Opp'n at 16.

In order to establish standing under Article III of the Constitution, a plaintiff must demonstrate the existence of an actual "case or controversy" for each form of relief sought. *See Friends of the Earth, Inc. v. Laidlaw Envt'l Servs.*, 528 U.S. 167, 185 (2000). Where injunctive relief is sought, a plaintiff's allegations must show that, at the time the litigation was initiated, the plaintiff faced a "real and immediate" threat of injury. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). For instance, a state agency may be enjoined from committing constitutional violations where there is proof that officers within the agency have engaged in a persistent pattern of unconstitutional conduct. *Allee v. Medrano*, 416 U.S. 802, 815-16 (1974).

Here, Plaintiff's claim for injunctive relief fails because he has not proven the existence of any unconstitutional practice by the City with respect to the use of excessive force or training officers to appropriately respond to armed citizens in mental crisis which would subject him to future injury. The Article III "case or controversy" requirement restricts federal jurisdiction to those cases where a plaintiff can maintain that the injury or the threat of future injury is "both 'real and immediate,' not 'conjectural or hypothetical.'" *Lyons*, 461 U.S. at 102 (1983). Absent any

16

evidence that the City's policies would cause him future injury, Plaintiff cannot show that he will again have a mental breakdown, be arrested, combat officers during the arrest, and refuse to obey officers' commands during their attempt to restrain him. *See id*. at 109 (finding that if a plaintiff "has made no showing that he is realistically threatened by a repetition of his experience . . . then he has not met the requirements for seeking an injunction in a federal court"). Accordingly, the Court GRANTS Defendants' Motion with respect to Plaintiff's claim for injunctive relief.

## CONCLUSION

Based on the analysis above, the Court finds that Plaintiff failed to produce any evidence of a policy, longstanding practice, or action by a final policymaker demonstrating that the City encourages its officers to use excessive force, disregard a suspect's mental illness during an arrest, or fail to employ de-escalation techniques during an arrest of an armed but mentally ill suspect. Accordingly, Defendants Motion for Partial Summary Judgment is GRANTED in its entirety.

**IT IS SO ORDERED.**

Dated: May 13, 2014

_____
MARIA-ELENA JAMES
United States Magistrate Judge